David A. Tilem (Bar No. 103825)
Sylvia S. Ho (Bar No. 247139)
LAW OFFICES OF DAVID A. TILEM
206 N. Jackson Street, Suite 201
Glendale, California 91206
Telephone:(818) 507-6000
Facsimile:(818) 507-6800

Proposed Attorneys for Debtor
and Debtor-In-Possession,
The Andalucia Project, LLC.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WOODLAND HILLS DIVISION**

| | |
|---|---|
| In re:<br><br>THE ANDALUCIA PROJECT, LLC<br><br><br><br>          Debtor. | Case No. 1:09-21502-MT<br><br>Chapter 11<br><br>**EMERGENCY MOTION** FOR: (1) ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL; (2) SETTING FINAL HEARING; AND (3) USE OF CASH COLLATERAL AFTER FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ARTHUR ASLANIAN IN SUPPORT THEREOF<br><br>Date: [TO BE SET]<br>Time:<br>Ctrm:<br>    21041 Burbank Blvd.<br>    Woodland Hills, CA 91367 |

**TO THE COURT, THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:**

This Emergency Motion is made by The Andalucia Project, LLC., the Debtor and Debtor-in-Possession. Debtor, through its proposed attorneys of record, seek the entry of Orders:(1) approving interim use of cash collateral pursuant to Section 363; (2) setting a final hearing on the use of cash collateral; and (3) authorizing the use

of cash collateral after final hearing.

Pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(2) and Local Bankruptcy Rule 9075-1(a), the Court may schedule a hearing on this Emergency Motion on less than forty-eight (48) hours notice. Debtor requests such a hearing on this Emergency Motion on twenty-four (24) hours notice or as soon thereafter as the Court can schedule the hearing.

Debtor has served this Emergency Motion on all affected secured creditors, the twenty largest unsecured creditors, and the Office of the United States Trustee by overnight mail. Upon notification by the Court of the time and date of the requested emergency hearing, Debtor's counsel will give telephonic, facsimile or overnight mail notice of the hearing date and time to the same parties.

Any interested party who wishes to object to the relief sought by the Emergency Motion or be heard in connection with the Emergency Motion must appear at the hearing and present such objection or must object as the Court otherwise directs.

Dated: September 1\_, 2009

LAW OFFICES OF DAVID A. TILEM

By: /s/ David A. Tilem
DAVID A. TILEM, Proposed
Attorneys for Debtor and
Debtor-In-Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## BACKGROUND

THE ANDALUCIA PROJECT, LLC. ("Debtor") has filed a voluntary Chapter 11 petition commencing this reorganization case on September 1, 2009 (the "Filing Date"). Debtor is a California limited liability corporation. Debtor owns rental property located at 4235-4243 Fulton Avenue, Sherman Oaks, CA 91423 and the adjacent lot located at 13309-13319 Woodbridge Avenue, Sherman Oaks, CA 94123 (the "Property"). The Debtor continues to operate its business as the debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

The Members of The Andalucia Project, LLC consist of Arthur Aslanian and his wife Anita Aslanian. Arthur Aslanian is the Managing Member of The Andalucia Project, LLC.

The Property is secured by one deed of trust and assignment of rents originally held by First Regional Bank (the "Bank"). On May 12, 2009 First Regional Bank recorded a Notice of Default and Election to Sell. On August 13, 2009 a Notice of Trustee's Sale was posted setting a foreclosure sale date for September 2, 2009.

At some point Debtor is informed and believes that Bank may have sold, transferred or otherwise assigned its interest under the note and deed of trust to NAT Real Estate Investments Management Group, Inc. ("NAT").

## II.

## JURISDICTION AND APPLICABLE LAW

The court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C.

§ 157(b)(2)(A) and (D). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested are sections 363(c)(2)(B), 363(e), 361 and 541 of the Bankruptcy Code[1], and Federal Rules of Bankruptcy Procedure ("FRBP") 2002, 4001, 6004 and 9014.

## III.

### DEBTOR'S URGENT NEED FOR USE OF CASH COLLATERAL

Unless Debtor's use of cash collateral is approved, Debtor will not be able to pay for utilities, provide appropriate insurance or maintain the Property.

Since NAT is a real estate investor, rather than a financial institution, its objective is to acquire the Property rather than obtain repayment on the loan it holds.[2] Accordingly, it is anticipated that NAT will make every effort to impede Debtor's ability to reorganize, including a basic request to use cash collateral to maintain the collateral.

## IV.

### USE OF CASH COLLATERAL IS APPROPRIATE IN THIS CASE

A. <u>This Court May Approve the Use Of Cash Collateral</u>

Section 363(c)(2) of the Bankruptcy Code provides that:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless --

---

[1] Title 11, United States Code, § 101, et seq. - referred to here as the "Bankruptcy Code" or, simply, the "Code."

[2] NAT's position is only comprehensible because NAT perceives that the "development" value of the property, i.e. the potential value of the property if fully developed, is greater than the current fair market value of the property. NAT hopes to realize that value for itself, rather than allowing that value to be used to pay creditor claims of this Estate.

        (A)    each entity that has an interest in such cash collateral consents; or

        (B)    the court, after notice and a hearing authorizes such use, sale, or lease in accordance with the provisions of this section.[3]

To the extent that NAT or any creditor has a perfected security interest in Debtor's cash, the affected assets constitute "Cash Collateral" 11 U.S.C. § 363(a).

Therefore, if Debtor is able to show by competent evidence that the secured creditor with an interest in the Cash Collateral is adequately protected, as that term is described in 11 U.S.C. § 361 of the Bankruptcy Code, Debtor's use of Cash Collateral should be allowed by this Court.

B.    <u>The Interests of the Secured Creditor Are Protected</u>.

The concept of adequate protection, as set forth in 11 U.S.C. § 361 was designed to be flexible in order to permit courts to "adapt to varying circumstances and changing modes of financing" (Sen. Rep. No. 95-989, 95th Cong., 2nd Sess. 53 (1978) reprinted in 1978 U.S. Code Cong. and Admin. News 5787, 5839 (1978); <u>accord</u> H.R. No. 95-595, 95th Cong., 1st Sess. 339 (1978) reprinted in 1978 U.S. Code Cong. and Admin. News 5963, 6295 (1978)), any means a court adopts for providing such protection must ensure that the "secured creditor receives the value for which he bargained." (Sen. Rep. No. 95-989, 95th Cong., 2nd Sess. 53 (1978) reprinted in 1978 U.S. Code Cong. and Admin. News 5787, 5839 (1978)). Thus, the Court must consider the facts and circumstances of each case and provide the secured creditor with that which will adequately protect its

---

[3] Since the Debtor is the Debtor-in-possession, it has all the rights of a bankruptcy trustee. 11 U.S.C. §1107(a).

interest in the collateral.

Further, as enunciated by the Supreme Court in <u>United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.</u>, 208 S.Ct. 755 (1986), a secured creditor is only entitled to adequate protection against any <u>reduction in value</u> of <u>its</u> interest in the collateral. In this case, Debtor concedes that the current fair market value of the Property is lower than the amount due NAT. Accordingly, NAT is only entitled to such adequate protection as is necessary to maintain that value.

In balancing whatever rights NAT may have against those of unsecured creditors, courts have frequently permitted a debtor to use cash collateral in circumstances where such use would enhance or preserve the value of the collateral. For example, in <u>In re Stein</u>, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the Court allowed a debtor to use cash collateral where the secured party had no equity cushion for protection. The Court in <u>Stein</u> found that the use of the cash collateral was necessary to the continued operations of the debtor, and that the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]." <u>Id.</u>, 460. <u>See also</u>, <u>In re Pine Lake Village Apartment co.</u>, 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) (debtor permitted to use cash collateral generated from rental income to preserve the value of real property which also secured creditor's claim); <u>In re Karl A. Neise, Inc.</u>, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally-secured creditor adequately protected by lien in post-petition property acquired by Debtor; Debtor can use cash collateral "in the normal operation of their business").

Under these standards, the interests of NAT are adequately

protected by permitting the use of cash collateral to purchase insurance for the Property, maintain the Property, pay utilities on the Property and provide for other administrative claims. After establishing a little emergency reserve, Debtor is fully prepared to turn over the balance of the funds to NAT on an interim basis provided, however, that those funds are applied to principal, rather than interest which is precluded under Bankruptcy Code §506(b).

C. <u>IN DETERMINING WHETHER CREDITORS ARE ADEQUATELY PROTECTED, THE COURT SHOULD PROMOTE REORGANIZATION</u>

It is well established that a bankruptcy court, where possible, should resolve issues presented in favor of reorganization. <u>In re Hoffman</u>, 51 B.R. 42, 47 (Bankr. W.D. Ark. 1985) (relief from stay); <u>In re A&B Heating and Air Conditioning, Inc.</u>, 48 B.R. 401, 403-404 (Bankr. M.D. Fla. 1985) (Section 105 injunction); <u>In re Lahman Manufacturing Company, Inc.</u>, 33 B.R. 681, 685 (Bankr. D.S.C. 1983) (Section 105 injunction); <u>In re Heatron, Inc.</u>, 6 B.R. 493, 496 (Bankr. W.D. Mo. 1980). In <u>In re O'Connor</u>, 808 F.2d. 1393 (10th Cir. 1987) the Tenth Circuit stated:

> "In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end."

808 F.2d. at 1397.

The Debtor urges this Court to adopt a similar approach and

authorize the use of cash collateral for necessary expenses related to the Property.

## VI.

## CONCLUSION

The key facts in this case are very straightforward. Debtor cannot pay utilities, acquire insurance or maintain the Property without using the rental income. First Regional Bank, or NAT, is the only secured creditor.

For the foregoing reasons, Debtor respectfully requests the entry of an Order authorizing the interim use of Cash Collateral and setting a date for a final hearing with regard to Debtor's further use of Cash Collateral; and for such other and further relief as this Court deems just and proper.

Dated: September 17, 2009

LAW OFFICES OF DAVID A. TILEM

By: _____
DAVID A. TILEM, Proposed
Attorneys for Debtor and
Debtor-in-Possession

**DECLARATION OF ARTHUR ASLANIAN**

I, Arthur Aslanian, hereby declare and state as follows:

1. I make this declaration based on my personal knowledge and from the records of The Andalucia Project, LLC ("Debtor") which are maintained on a contemporaneous basis, used and relied upon in the ordinary course of our business.

2. Debtor was formed in 2006 to acquire, manage and develop certain real property located at 4235-4243 Fulton Avenue, Sherman Oaks, CA 91423 and the adjacent lot located at 13309-13319 Woodbridge Avenue, Sherman Oaks, CA 94123 ("the Property").

3. Debtor's members are myself and my wife. I am the Debtor's managing member, and I am familiar with its business income, expenses, assets and liabilities.

4. The Property was acquired with a purchase money loan from First Regional Bank ("Bank") which (other than taxes) is the only encumbrance.

5. The Property is improved with 2 structures containing 11 rental units. Only 1 of those units are currently vacant. The Property currently generates about $8,500/month in rental income. I believe that the property has a current fair market value of $1.5 million whereas the amount owed Bank is more than $2 million.

6. Debtor fell behind in making the payments to Bank because the note became due and payable.

7. On May 12, 2009 First Regional Bank recorded a Notice of Default and Election to Sell.

8. On August 13, 2009 a Notice of Trustee's Sale was posted setting a foreclosure sale date for September 2, 2009.

9. At some point Debtor is informed and believes that Bank

may have sold, transferred or otherwise assigned its interest under the note and deed of trust to NAT Real Estate Investments Management Group, Inc. ("NAT"). It appears that NAT is an investor/developer of real property, rather than a financial institution.

10. Debtor filed a voluntary Chapter 11 petition on September 1, 2009 (the "Filing Date").

11. Debtor cannot pay utilities, acquire insurance, pay administrative expenses or maintain the Property without using the rental income, ie the cash collateral.

12. After establishing a little emergency reserve, Debtor is fully prepared to turn over the balance of the rental income to NAT or whomever holds the note secured by the Property provided, however, that those funds are applied to principal.

13. At the request of Debtor's attorneys, I prepared the budget attended hereto as Exhibit "A". Exhibit "A" shows anticipated rental income and weekly cash requirements.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on September ___, 2009 at _____, California.

*See attached*
_____
Arthur Aslanian

may have sold, transferred or otherwise assigned its interest under the note and deed of trust to NAT Real Estate Investments Management Group, Inc. ("NAT"). It appears that NAT is an investor/developer of real property, rather than a financial institution.

10. Debtor filed a voluntary Chapter 11 petition on September 1, 2009 (the "Filing Date").

11. Debtor cannot pay utilities, acquire insurance, pay administrative expenses or maintain the Property without using the rental income, ie the cash collateral.

12. After establishing a little emergency reserve, Debtor is fully prepared to turn over the balance of the rental income to NAT or whomever holds the note secured by the Property provided, however, that those funds are applied to principal.

13. At the request of Debtor's attorneys, I prepared the budget attended hereto as Exhibit "A". Exhibit "A" shows anticipated rental income and weekly cash requirements.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on September 17, 2009 at Sherman Oaks, California.

Arthur Aslanian

## DECLARATION OF DAVID A. TILEM

I, DAVID A. TILEM, hereby declare and state as follows:

1. I am an attorney at law licensed to practice and practicing before the Courts of the State of California. Except as to matters stated to be based upon information and belief, the facts set forth in this declaration are personally known to me to be true and correct and if called upon to do so, I could and would testify competently thereto.

2. Through my office, The Andalucia Project, LLC ("Debtor") filed a voluntary Chapter 11 petition on September 1, 2009. Since that time, Debtor has been operating its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107, 1108.

3. On or about September 4, 2009 I received a telephone call from attorney Susan Vaage who identified herself as counsel for NAT Real Estate Investments Management Group, Inc. ("NAT"). She advised me that NAT was the current holder of the note secured by deed of trust against the real property owned by this Estate.

4. I have requested, but not yet received, documents which reflect that NAT, rather than First Regional Bank, is the holder of the Note.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

5. Prior to completing this motion I had a further discussion with Ms. Vaage in the hope that the parties could reach some agreement regarding the use of cash collateral. I was advised that NAT is not interested in reaching such an agreement.

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing is true and correct, and that this declaration was executed on the 17th day of September, 2009 at Glendale, California.

_____
DAVID A. TILEM

THE ANDALUCIA PROJECT, LLC
PROJECTED CASH FLOW
SEPTEMBER - NOVEMBER 2009

| DESCRIPTION | W/E 9/5 | W/E 9/12 | W/E 9/19 | W/E 9/26 | W/E 10/3 | W/E 10/10 | W/E 10/17 | W/E 10/24 | W/E 10/31 | W/E 11/07 | W/E 11/14 | W/E 11/21 | W/E 11/28 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CASH RECEIPTS | $3,400.00 | $1,800.00 | $2,500.00 | $2,000.00 | $3,400.00 | $1,800.00 | $2,500.00 | $2,000.00 | | $3,400.00 | $1,800.00 | $2,500.00 | $2,000.00 | $29,100.00 |
| OPERATING EXPENSES | | | | | | | | | | | | | | |
| ADVERTISING | | | | $100.00 | | | | $100.00 | | | | | $100.00 | $300.00 |
| INSURANCE | $223.00 | | | | $223.00 | | | | | $223.00 | | | | $669.00 |
| TRASH REMOVAL | $100.00 | | | | $100.00 | | | | | $100.00 | | | | $300.00 |
| GARDENING | $100.00 | | | | $100.00 | | | | | $100.00 | | | | $300.00 |
| MANAGEMENT FEES | | | | $480.00 | | | | $480.00 | | | | | $480.00 | $1,440.00 |
| GAS AND ELECTRIC | $600.00 | | | | $600.00 | | | | | $600.00 | | | | $1,800.00 |
| REPAIRS | | | | $200.00 | | | | $200.00 | | | | | $200.00 | $600.00 |
| SUBTOTAL | $1,023.00 | $0.00 | $0.00 | $780.00 | $1,023.00 | $0.00 | $0.00 | $780.00 | $0.00 | $1,023.00 | $0.00 | $0.00 | $780.00 | $5,409.00 |
| CASH BALANCE | $2,377.00 | $1,800.00 | $2,500.00 | $1,220.00 | $2,377.00 | $1,800.00 | $2,500.00 | $1,220.00 | $0.00 | $2,377.00 | $1,800.00 | $2,500.00 | $1,220.00 | $23,691.00 |

EXHIBIT A