David A. Tilem (Bar No. 103825)
LAW OFFICES OF DAVID A. TILEM
206 N. Jackson Street, Suite 201
Glendale, California 91206
Telephone:(818) 507-6000
Facsimile:(818) 507-6800
DavidTilem@TilemLaw.com

Attorneys for Debtors and
Debtors-In-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WOODLAND HILLS DIVISION

In re:

**THE ANDALUCIA PROJECT, LLC**

                    Debtor.

) Case No. 1:09-21502-MT
)
) Chapter 11
)
) **DEBTOR'S DISCLOSURE STATEMENT**
) **AND PLAN OF REORGANIZATION**
)
) Date: March 8, 2010
) Time: 10:00 a.m.
) Ctrm: 302
)        21041 Burbank Blvd.
)        Woodland Hills, CA 91367
)
)

# **TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . i

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . 1

II.    GENERAL DISCLAIMER AND VOTING PROCEDURE . . . . . . . . . 2

III.   WHO MAY OBJECT TO CONFIRMATION OF THE PLAN . . . . . . . . 3

IV.    WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN . . . . . . . . 3

V.     VOTES NECESSARY TO CONFIRM THE PLAN . . . . . . . . . . . 5

VI.    INFORMATION REGARDING VOTING IN THIS CASE . . . . . . . . 5

VII.   DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS
       AND EVENTS PRECIPITATING BANKRUPTCY FILING . . . . . . . . 6

VIII.  PRE-CONFIRMATION REQUIREMENTS OF DEBTOR . . . . . . . . . 7

IX.    CRITICAL PLAN PROVISIONS . . . . . . . . . . . . . . . . . 8

X.     DESCRIPTION AND TREATMENT OF CLAIMS . . . . . . . . . . . 8

XI.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS . . . 15

XII.   ASSETS AND LIABILITIES OF THE ESTATE . . . . . . . . . . 16

XIII.  TREATMENT OF NON-CONSENTING CLASSES . . . . . . . . . . 16

XIV.   TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING
       CLASS (CHAPTER 7 LIQUIDATION ANALYSIS) . . . . . . . . 18

XV.    FUTURE DEBTOR . . . . . . . . . . . . . . . . . . . . . 19

XVI.   SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF
       CONTRACTS AND LEASES; OTHER PROVISIONS . . . . . . . . 20

XVII.  BANKRUPTCY PROCEEDINGS . . . . . . . . . . . . . . . . 21

XVIII. TAX CONSEQUENCES OF PLAN . . . . . . . . . . . . . . . 21

XIX.   EFFECT OF CONFIRMATION OF PLAN . . . . . . . . . . . . 22

XX.    DECLARATION IN SUPPORT OF DISCLOSURE
       STATEMENT AND PLAN . . . . . . . . . . . . . . . . . . 24

XXI.   SUPPORTING EXHIBITS SEE SEPARATELY CAPTIONED PLEADING
       EXHIBITS A-F

# I.

## INTRODUCTION

On September 1, 2009, the Andalucia Project, LLC ("Debtor" or "Proponent") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code"). The document you are reading is both the Plan of Reorganization ("Plan") and the Disclosure Statement. Debtor has proposed the Plan to treat the claims of the Debtor's creditors and to reorganize the Debtor's business affairs. A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed. The Bankruptcy Court ("Court") has approved the form of this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

The Proponent has reserved _____, 2010 at ____ _.m. in Courtroom 1575 for a hearing to determine whether the Court will confirm the Plan. Any interested party desiring further information should contact:

David A. Tilem
Law Offices of David A. Tilem
206 N. Jackson St., #201
Glendale, CA 91206
Telephone: 818-507-6000
Email: ldiaz@tilemlaw.com

1

## II.

### GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE SEPARATELY CAPTIONED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN. IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS DOCUMENT ARE SET FORTH IN THE DECLARATION IN SECTION XX BELOW.  ALL REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the enclosed exhibits, please vote on the enclosed ballot and return it in the enclosed envelope.

The Proponent has reserved a hearing date for a hearing to determine whether the Court will confirm the Plan. Please refer to Section I above for the specific hearing date. If, after receiving the ballots, it appears that the Proponent has the requisite number of votes required by the Code, the Proponent will file a motion for an order confirming the Plan.

The Motion shall at least be served on all impaired creditors and partners or shareholders who reject the Plan and on the Office of the United States Trustee. Any opposition to the Motion shall be filed and served on the Debtor, Debtor's counsel and the Office of the United States Trustee no later than eleven days prior to the

2

hearing date. Failure to oppose the confirmation of the Plan may be
deemed consent to the Plan's confirmation.

### III.

### WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

Any party in interest may object to confirmation of the Plan,
but as explained below not everyone is entitled to vote to accept
or reject the Plan.

### IV.

### WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

It requires both an allowed and impaired claim in order to
vote either to accept or reject the Plan.  A claim is defined by
the Code to include a right to payment from the Debtor.

In order to vote a creditor or interest-holder must first have
an <u>allowed claim</u>. With the exceptions explained below, a claim is
allowed if proof of the claim is properly filed before any bar date
and no party in interest has objected, or if the court has entered
an order allowing the claim. Please refer to Section VI below for
specific information regarding bar dates in this case.

Under certain circumstances a creditor may have an allowed
claim even if a proof of claim was not filed and the bar date for
filing a proof of claim has passed. A claim is deemed allowed if
the claim is listed on the Debtor's schedules and is not scheduled
as disputed, contingent, or unliquidated.  Exhibit "C" contains a
list of unsecured claims and indicates those claims which are
disputed, contingent, or unliquidated.[1]

In order to vote, an allowed claim must also be impaired by

---

[1]    All Exhibits to this Plan have been filed separately with
the Court in a document entitled "Exhibits to Disclosure Statement and
Plan of Reorganization".

1   the Plan.

2       Impaired creditors include those whose legal, equitable, and
3   contractual rights are altered by the Plan, even if the alteration
4   is beneficial to the creditor. A contract provision that entitles a
5   creditor to accelerated payment upon default does not, however,
6   necessarily render the claimant impaired, even if the Debtor
7   defaulted and the Plan does not provide the creditor with
8   accelerated payment. The creditor is deemed unimpaired so long as
9   the Plan cures the default, reinstates the maturity of such claim
10  as it existed before default, compensates for any damages incurred
11  as a result of reasonable reliance upon the acceleration clause,
12  and (except for default arising from failure to operate a
13  nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West
14  Supp. 2006)) compensates for any actual pecuniary loss incurred as
15  a result of any failure to perform a non-monetary obligation.

16      There are also some types of claims that the Code requires be
17  treated a certain way. For that reason they are considered
18  unimpaired and therefore holders of these claims cannot vote.

19      To summarize, there are two prerequisites to voting: a claim
20  must be both allowed and impaired under the Plan.

21      If a creditor has an allowed and impaired claim, then he or
22  she may vote either to accept or reject the Plan (unimpaired
23  claimants are deemed to have accepted the Plan). Impaired claims
24  are placed in classes and it is the class that must accept the
25  Plan.  Members of unimpaired classes do not vote, although as
26  stated above, they may object to confirmation of the Plan. Even if
27  all classes do not vote in favor of the Plan, the Plan may
28  nonetheless be confirmed if the dissenting classes are treated in a

manner prescribed by the Code. Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

Section IX sets forth which claims are in which class. Secured claims are placed in separate classes from unsecured claims. Fed. R. Bankr. P. 3018(d) provides: "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a Plan in both capacities."

**V.**

**VOTES NECESSARY TO CONFIRM THE PLAN**

The Court may confirm the Plan if at least one non-insider impaired class of claims has accepted and certain statutory requirements are met as to both non-consenting members within a consenting class and as to dissenting classes. A class of claims has accepted the Plan when more than one-half in number and at least two-thirds in amount of the allowed claims actually voting, vote in favor of the Plan. It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate. That is the subject of any upcoming confirmation hearing.

**VI.**

**INFORMATION REGARDING VOTING IN THIS CASE**

The Court has yet to set a bar date for filing proofs of claim and there is no deadline for objecting to claims.

In this case the Proponent believes that Classes 1 and 5 are not impaired whereas Classes 2, 3 and 4 are impaired and therefore entitled to vote. Unimpaired classes do not vote. A party that

5

1     disputes the Proponent's characterization of its claim as

2     unimpaired may request a finding of impairment from the Court in

3     order to obtain the right to vote.

4         Ballots must be received by the Proponent, addressed to:

5                  Lorena Diaz

              Law Offices of David A. Tilem

6               206 N. Jackson St., #201

               Glendale, CA 91206

7

8     by the close of business (5:00 p.m. California time) on _____,

9     2010.

10                        **VII.**

11        **DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS**

12         **AND EVENTS PRECIPITATING BANKRUPTCY FILING**

13        The Debtor is a limited liability company formed in 2006.  Its

14     members are husband and wife, Arthur (99%) and Anita (1%) Aslanian.

15        The Debtor, and hence the bankruptcy estate, owns a parcel of

16     real property located at 4235-4241 N. Fulton Avenue, Los Angeles,

17     CA 91423 ("the Property").  The Property is currently improved with

18     two apartment buildings containing a total of 11 units.  There are

19     only one or two vacancies and the Debtor generates under $10,000 of

20     rents each month.

21        The structures are approximately 65 years old.  At a hearing

22     on December 21, 2009, the Bankruptcy Court determined the value of

23     the Property to be $1.4 million, however the Court made it clear

24     that the value of the Property might be different after January 1,

25     2010.

26        Debtor acquired the Property in 2006 for the purpose of razing

27     the existing structures and constructing thirty (30) condominium

28     units.  Debtor currently has a tentative tract map which permits

1   the construction of these units, but final approval of the

2   construction plans has been delayed by the City.

3       The mortgage note held by First Regional Bank matured and

4   became all due and payable.  When the bank failed, the loan was

5   sold to NAT Real Estate Management Group, Inc. ("NAT").  The

6   purchase price of the loan to NAT is unknown. The face amount of

7   the loan is now believed to be approximately $2.2 million.  Efforts

8   by the Debtor to negotiate a forbearance, deferment or restructure

9   of the mortgage obligation have met with only modest success, but

10  the parties have run out of time to continue the discussions.

11                              **VIII.**

12          **PRE-CONFIRMATION REQUIREMENTS OF DEBTOR**

13      Debtor has addressed the requirements of 11 U.S.C.A. §1116.

14  Specifically:

15      1.   On January 21, 2010, Debtor filed those documents

16  required by §1116(1);

17      2.   Debtor has attended all meetings set by the Office of the

18  United States Trustee as required by §1116(2);

19      3.   As required by §1116(3), on September 1, 2009 Debtor

20  filed its Schedules A, D, E, F, G & H.  Schedule B and the

21  statement of financial affairs were filed on September 16, 2009;

22      4.   Section 1116(4) requires the Debtor to file certain

23  financial reports.  While the reports have not always been timely,

24  the Debtor has filed all of the reports due for the months of

25  September through December, 2009.  The report for January 2010 is

26  not yet due.

27  / / /

28  / / /

5.    As required by §1116(5), Debtor has maintained all appropriate insurance as reflected in the monthly financial reports filed with the Office of the United States Trustee;

6.    As required by §1116(6), Debtor has filed all returns and paid all taxes as reflected in the monthly financial reports filed with the Office of the United States Trustee; and

7.    As required by §1116(7), Debtor has no objection to the inspection of its books, records and premises by the Office of the United States Trustee.

## IX.

## CRITICAL PLAN PROVISIONS

Listed below are the sources of money earmarked to pay creditors and interest-holders.

a. Proceeds from the sale or refinance of the Property.

b. Capital contributions from Debtor's principals.

## X.

## DESCRIPTION AND TREATMENT OF CLAIMS

a. Overview of Plan Payments

Below is a summary of who gets paid what and when and from what source. The identity of members within a particular class is explained beginning on the next page. The second column lists two amounts. First, the amount of each payment, or if only one is to be made, then that amount; second, the total amount that will be paid. The Proponent is usually not required by law to pay an unsecured creditor everything it would otherwise be entitled to, had a bankruptcy case not commenced. The "Payment Due Date" column states the frequency with which payments will be made and the starting and ending dates. Look at the starting date to figure out

8

1  who will be paid before and after you and in what amount. The

2  "Source of Payment" column describes the expected source of

3  payment. Further details regarding the source of payment are found

4  below in sections XI and XII.

5       The timing of payments to many creditors is determined by the

6  "Effective Date." Administrative claims, unless otherwise stated,

7  must be paid by the Effective Date. The timing of payments to

8  impaired creditors is usually measured from the Effective Date.

9       In this case, the "Effective Date" is the first business day

10  which is more than fourteen (14) calendar days after the Court

11  enters an Order approving this Plan.

12  / / /

13  / / /

14  / / /

15  / / /

| Payment Recipient | Payment Amount (Total to be Paid) | Payment Due Date | Source of Payment |
|---|---|---|---|
| Law Offices of David A. Tilem (Debtor's bankruptcy counsel) | Est. $41,039 100% Actual amount to be fixed by Bankruptcy Court. | Later of Effective Date or entry of Bankruptcy Court Order approving final fee application | Retainer: $11,039 Balance (est): $30,000 Balance to be paid from capital contribution by Debtor's principals. |
| Office of the United States Trustee | Quarterly fees with amount determined on quarterly basis. 100% | January 31, April 30, July 31, October 31 of each calendar year. | Capital contribution by Debtor's principals. The reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6). The reorganized Debtor will file all reports required by the UST in connection with payment of these fees. |
| Clerk US Bankruptcy Court | Est. $100 100% | On or before the Effective Date | Capital contribution by Debtor's principals. |
| Los Angeles County Tax Collector | Est. $19,400 plus $30,000/year 100% | Current balance due paid on or before the Effective Date. Future amounts paid when due | Capital contributions by Debtor's principals. Creditor to retain any valid lien on Property. |
| NAT Real Estate Management Group, Inc. | $2,264,312.24 as of 10/2/2009 plus interest, fees and expenses authorized under applicable California law. 100% | Initial payment of $300,000 due within 10 business days of Effective Date. Subsequent payments due per terms of modified Note | All payments to be paid from capital contributions by Debtor's principals which shall be applied to costs, advances, legal fees, interest (through the Effective Date) and principal (in that order). Debtor shall execute a new promissory note ("the Plan Note") for the remaining balance due bearing interest (commencing as of the Effective Date) at the same rate as the pre-confirmation Note ("the Old Note") held by creditor. The Old Note shall be |

| | | | |
|---|---|---|---|
| | | | deemed satisfied in full. Interest only payments shall commence under the Plan Note on the first business day of the first calendar month which is at least 20 days after the Effective Date and continue for a period of 60 months. The Plan Note shall be all due and payable on the fifth anniversary of the Effective Date.  All other terms of the Plan Note shall be the same as the Old Note. |
| Tenant Security Deposits | Est. $6,500 Precise amount subject to claims filing deadline and tenant verification | Upon termination of rental subject to any claims for damage, repair or maintenance of the property | Capital contributions by Debtor's principals. Amount needed to pay claims in full will be deposited into non-interest bearing escrow account and held pending termination of tenancy of each individual tenant. |
| General Unsecured Claims | $31,584.67 | Paid in full within 90 days after Effective Date | Capital contributions by Debtor's principals. |
| Equity Holders | | Retain interests | Debtor's principals will contribute not less than $400,000 within the first 90 days after the Effective Date. |

    <u>Disputed Claims</u>.  With respect to any claim which remains in dispute as of the date when payment would otherwise be due under this Plan, the Disbursing Agent shall deposit the amount claimed into a segregated interest bearing account to be held in trust for the benefit of the claim holder.  The Disbursing Agent shall file with the Court a notice that the funds have been deposited.  The

notice shall be served on the claim holder, the objecting party, the Debtor and the Office of the United States Trustee.  Any further disposition of the funds shall be made pursuant to an Order of the Bankruptcy Court or some other Court of competent jurisdiction.  If a surplus arises from the fact that claims are disallowed or allowed in an amount less than originally sought, the surplus shall revert back to the Debtor.

The Court has yet to set a deadline for creditors to file claims or proofs of interest or for the Debtor to file any objections thereto.

The Debtor has two equity holders: Arthur Aslanian and Anita Aslanian.  They are husband and wife.  Arthur owns 99% of Debtor's equity and Anita holds the remaining 1% of Debtor's equity.

<u>Below is a detailed description and treatment of
administrative expenses, claims and interests</u>

b. <u>Administrative Expenses</u>

1.    These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon.

2.    The Code requires that allowed administrative expenses be paid on the Effective Date unless the party holding the administrative expense agrees otherwise. The claimants in this case have agreed otherwise as set forth herein.

<u>Administrative Expense #1</u>: **The Law Offices of David A. Tilem
$41,039, subject to Court approval**

Some $11,039 of this claim has been funded through a pre-petition retainer. The balance as allowed by the Court is to be paid at the later of the Effective Date or the date on which the Court fixes professional compensation. Payment shall be made from a capital contribution by Debtor's principals.

<u>Administrative Expense #2</u>: **Court Clerk Fees**

Estimated at $100 to be paid on or before the Effective Date from the first funds available to the Debtor, regardless of source.

TOTAL ADMINISTRATIVE CLAIMS: $41,139.

c. <u>Unsecured Tax Claims</u>

    1.   These include certain types of property, sales, and income taxes.

    2.   The Code requires that the holders of such claims receive regular installment payments in cash over a period ending not later than five years after the date of the order for relief, unless agreed otherwise. The claimant has not agreed otherwise. The total cash payments must have a present value equal to the amount of the allowed claim. The treatment of this claim is in a manner not less favorable than the most favored nonpriority unsecured claim provided in this Plan (other than any cash payments to an administratively convenient class). The amount of the allowed claim includes the amount of tax owed plus interest of .5% per month.

Unsecured Tax Claim

Debtor believes that there are no such claims.

d. Secured Claims

All secured claims are secured by the Property.  A schedule of the secured claims is attached as Exhibit "A". The Exhibit describes each claim, states its relative priority and describes the proposed treatment of that claim.

CLASS ONE - **Secured Claim of Los Angeles County Tax Collector ("RP Tax") - Not Impaired**

The amount of this claim is estimated at $19,400, but the claim continues to accrue interest and will be a little larger by the Effective Date.  This claim will be paid on or before the Effective Date utilizing funds contributed by Debtor's principals.

CLASS TWO - **Secured Claim of NAT Real Estate Management Group, Inc. ("NAT") - Impaired**

NAT has filed a relief from stay motion in which it contends that the amount of the claim, as of October 2, 2009 is $2,264,312.24.  Pursuant to Section 506(b), the amount of the claim may be overstated.  NAT has yet to file a Proof of Claim and Debtor reserves the right to challenge the amount of NAT's Claim.

NAT's claim will be satisfied in the manner set forth above and on Exhibit "A"

e. CLASS THREE - **Tenant Security Deposits - Impaired**

See Exhibit "B" for the list of claimants and amount owed to each.  Exhibit "B" also indicates which claims are the subject of dispute. Disputes are due to the fact that no

claims deadline has yet be set and no proofs of claim have
been filed.  Also the amounts of some security deposits are
unknown since they were paid prior to the date on which Debtor
acquired the Property

Total amount of allowed claims: $6,500 estimated.  These
claims will be paid in the manner set forth above and on
Exhibit "B".

f. <u>CLASS FOUR</u> - **General Unsecured Creditor Claims - Impaired**

See Exhibit "C" for the list of claimants and amount owed
each.  Exhibit "C" also indicates which claims are the subject
of dispute.

Total amount of allowed claims: $31,584.67.  Subject to
any objections to be resolved by the Court, these claims will
be paid in the manner set forth above and on Exhibit "C".

g. <u>CLASS FIVE</u> - **Membership Interests - Not Impaired**

Under the Plan, the Members retain their interests in
exchange for sufficient funds to satisfy all obligations under
the Plan.

**XI.**

**SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS**

The Plan cannot be confirmed unless the Court finds that it is
"feasible," which means that the Proponent has timely submitted
evidence establishing that the Debtor will have sufficient funds
available to satisfy all expenses, including the scheduled creditor
payments discussed above. What normally follows is a statement of
projected cash flow for the duration of the Plan, however in this
case, all non-trivial claims are being paid by Debtor's principals.
Accordingly, the Debtor's cash flow and business operations are not

1   relevant to determine the feasibility of this Plan.

2       Instead, separately filed herewith as Exhibit "D" is a

3   declaration of Arthur Aslanian which reflects that he has

4   sufficient funds on hand to satisfy those obligations under the

5   Plan which are due within the first six (6) months of the Plan, and

6   that he has sufficient assets and resources to satisfy the

7   remaining claims over the entire term of the Plan.

8                                   **XII.**

9               **ASSETS AND LIABILITIES OF THE ESTATE**

10      a. <u>Assets</u>

11      The identity and fair market value of the estate's assets are

12  listed in Exhibit "E" so that the reader can assess what assets are

13  at least theoretically available to satisfy claims and to evaluate

14  the overall worth of the bankruptcy estate.   The principal asset of

15  the Debtor is its real property.

16      b. <u>Liabilities</u>

17      All of the claims against the estate are reflected in Exhibits

18  "A", "B" and "C".

19      c. <u>Summary</u>

20      The fair market value of all assets is less than the total

21  liabilities against the estate.   Notwithstanding that fact, Debtor

22  proposes to pay all claims in full over the life of the Plan.

23                                  **XIII.**

24              **TREATMENT OF NON-CONSENTING CLASSES**

25      As stated above, even if all classes do not consent to the

26  proposed treatment of their claims under the Plan, the Plan may

27  nonetheless be confirmed if the dissenting classes are treated in a

28  manner prescribed by the Code.   The process by which dissenting

classes are forced to abide by the terms of a Plan is commonly
referred to as "cramdown." The Code allows dissenting classes to
be crammed down if the Plan does not "discriminate unfairly" and is
"fair and equitable." The Code does not define discrimination, but
it does provide a minimum definition of "fair and equitable." The
term can mean that secured claimants retain their liens and receive
cash payments whose present value equals the value of their
security interest. For example, if a creditor lends the Debtor
$100,000 and obtains a security interest in property that is worth
only $80,000, the "fair and equitable" requirement means that the
claimant is entitled to cash payments whose present value equals
$80,000 and not $100,000. The term means that unsecured claimants
whose claims are not fully satisfied at least know that no claim or
interest that is junior to theirs will receive anything under the
Plan, except where the Debtor is an individual, has elected to
retain property included in the Estate under 11 U.S.C.A. § 1115
(West Supp. 2006) and has satisfied 11 U.S.C.A. 1129(b)(2)(B)(ii)
(West Supp. 2006). "Fair and equitable" means that each holder of
an interest must receive the value of such interest or else no
junior interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes
against the Plan, the Plan cannot be confirmed where the Debtor or
a class of interest holders (e.g. shareholders or partners) will
receive or retain any property under the Plan, unless the Plan
provides that the class of general unsecured claims shall be paid
in full with interest. If a class of interest holders votes
against the Plan, the Plan cannot be confirmed where the Debtor
will receive or retain any property under the Plan, unless the Plan

17

1  provides that the class of interest holders shall be paid in full

2  with interest.  These are complex statutory provisions and the

3  preceding paragraphs do not purport to state or explain all of

4  them.

## XIV.

### TREATMENT OF NON-CONSENTING MEMBERS OF CONSENTING

### CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)

8      The Plan must provide that a non-consenting impaired claimant

9  of a consenting class receive at least as much as would be

10 available had the Debtor filed a Chapter 7 petition

11 instead.

12     In a Chapter 7 case the general rule is that the Debtor's

13 assets are sold by a trustee. Unsecured creditors generally share

14 in the proceeds of sale only after secured creditors and

15 administrative claimants are paid. Certain unsecured creditors get

16 paid before other unsecured creditors do. Unsecured creditors with

17 the same priority share in proportion to the amount of their

18 allowed claim in relationship to the total amount of allowed

19 claims.

20     A creditor may recover from the assets of the bankruptcy

21 estate less under Chapter 7 than under Chapter 11 for many

22 reasons.  If this case were a Chapter 7, the real property would be

23 lost to foreclosure and other creditors would receive nothing.  The

24 proposed Plan will pay all creditors in full.

25 / / /

26 / / /

27 / / /

28 / / /

# XV.

## FUTURE DEBTOR

a. <u>Management of Debtor</u>

    1. Names of persons who will manage the Debtor's business affairs: Arthur Aslanian

    2. Proposed compensation to persons listed above: None.

    3. Qualifications: Mr. Aslanian is an experienced developer of real property and, together with his wife, is providing all of the funding for the Plan.

    4. Affiliation of persons to Debtor: Mr. Aslanian is a Member and the Managing Member of the Debtor.

    5. Job description: Managing Member.

b. <u>Disbursing Agent</u>

The Disbursing Agent is responsible for:

    (a). completing a sale or refinance of the real property;

    (b). managing and resolving any objections to claims;

    (c). collecting and accounting for all funds;

    (d). disbursing funds to creditors under the terms of this Plan;

    (e). preparing and filing financial reports with the Office of the United States Trustee;

    (f). paying ongoing quarterly fees to the Office of the United States Trustee;

    (g). seeking a final decree to close the case.

The disbursing agent is Arthur Aslanian.  His address and telephone number are: 14900 Ventura Blvd., #220, Sherman Oaks, CA 91403, 818-990-3301.

1.  Proposed compensation to person listed above: None

2.  Qualifications: Managing Member of Debtor.

3.  Affiliation of person to Debtor: Managing Member.

4.  Job description: The Disbursing Agent will pay all amounts due under the Plan from fund deposited by the Mr. and Mrs. Aslanian into the Debtor's accounts.

5.  The disbursing agent will not be required to post a bond.

c. <u>Future Financial Outlook</u>

The Proponent believes that the Debtor's economic health is irrelevant to the outcome of this case.  The only real risk to the Plan is if the commercial real estate market falls by more that 50% in the next six months.  While some decline in that market is expected and has already occurred, a further precipitous drop of that magnitude would have consequences for the American economy far beyond the mere failure of this Debtor to fully pay its claims. Even under those circumstances, however, all creditors other than NAT will have been paid in full and NAT will be left to its non-bankruptcy remedy - foreclosure - having already received the additional cash payment of not less than $300,000.

**XVI.**

**SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF**

**CONTRACTS AND LEASES; OTHER PROVISIONS**

No transfers of property are contemplated under this Plan. All leases between the Debtor and its residential tenants are hereby assumed.  All other leases or executory contracts are hereby rejected.  Any party holding a claim as a result of the rejection of any executory contract may file a claim within 30 days after the

1  Effective Date.  Debtor will thereafter have 30 days to file any

2  objections.  If no objections are filed or any objections are

3  overruled by the Court, the claims will be paid in full within 30

4  days thereafter.  This is the same time interval for payment of

5  general unsecured creditors under Class 4.

6  **XVII.**

7  **BANKRUPTCY PROCEEDINGS**

8      The Bankruptcy Court has previously considered the following

9  motions and made the Orders reflected below.

| MOTION | ORDER | DATE |
|---|---|---|
| Motion for use of cash collateral (interim) | Granted | 09/22/09 |
| Motion for use of cash collateral (interim) | Granted | 11/17/09 |
| Motion for use of cash collateral (interim) | Granted | 12/18/09 |
| Motion for use of cash collateral (final) | Granted | 12/30/09 |
| Motion for leave to employ general bankruptcy counsel | Granted | 10/09/09 |
| Motion for leave to employ appraiser | Granted | 12/08/09 |
| Motion for relief from stay | Denied with conditions | 11/17/09 |
| Court issued a scheduling order | | 11/20/09 |
| Motion for leave to finance insurance premium | Granted | 12/10/09 |

19      The only matter now pending before the Court in this case is

20  consideration of this Plan and Disclosure Statement

21  **XVIII.**

22  **TAX CONSEQUENCES OF PLAN**

23      a. Tax Consequences to the Debtor

24      This Plan anticipates the contribution of capital by Debtor's

25  principals to pay all claims in full.  Such contributions only

26  affect the basis of the interests held by the principals.  Debtor

27  is not aware of any other tax consequences to the Debtor as a

28  result of this Plan.

b. <u>Tax Consequences to Creditors</u>

The tax consequences to creditors of payment under this Plan depend on the individual tax circumstances of each creditor. Debtor has no information about the individual tax circumstances of any of its creditors, accordingly, only general comments are possible.

For cash basis taxpayers, payment of their claims will likely constitute income to be recognized in the year of receipt. For accrual basis taxpayers, payment may or may not be recognized as income depending on whether the creditor has previously written off the receivable as uncollectible.

## XIX.

### EFFECT OF CONFIRMATION OF PLAN

a. <u>General Comments</u>

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the Plan, and any creditor or general partner of the Debtor, even those who do not vote to accept the Plan.

The confirmation of the Plan vests all property of the estate in the Debtor.

The automatic stay is lifted upon confirmation as to property of the estate. However, the stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge, if any. If the Debtor does not seek a discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's property terminates upon entry of the order confirming the Plan.

b.    Discharge of Liability for Payment of Debts; Status of
      Liens; Equity Security Holders

Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C.A. 1141(d)(3), the debtor may obtain a discharge only upon specific order of the Court. In this case, the Debtor is entitled to receive a discharge and will receive a discharge upon entry of a Final Decree.

The confirmation of the Plan does not discharge the Debtor from any debt of a kind specified in 11 U.S.C.A. 523(a)(2)(A)-(B) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute, or for a tax or customs duty with respect to which the debtor made a fraudulent tax return or willfully attempted in any manner to evade or to defeat such tax or such customs duty.

c. Modification of the Plan

The Proponent may modify the Plan pursuant to 11 U.S.C.A. §1127.

d. Post-Confirmation Causes of Action

To the best knowledge of the Proponent, the estate has the following causes of action: None.

e. Final Decree

Once the Plan has been consummated, a final decree may be entered upon motion of the Proponent. The effect of the final decree is to close the bankruptcy case. After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.

23

**XX.**

**DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN**

I, Arthur Aslanian, declare under penalty of perjury under the laws of the United States of America that the following statements are true and based upon personal knowledge.

1. David A. Tilem ("Tilem") is the individual who prepared this document. Tilem is Debtor's attorney of record in this case.

2. I provided all of the financial data used in this document.

3. All facts and representations in the Plan and Disclosure Statement are true to the best of my knowledge.

4. No fact material to a claimant or equity security holder in voting to accept or reject the proposed Plan has been omitted.

5. In my capacity as Managing Member of the Debtor. I have prepared or directed the preparation of all of the financial documents which are filed with this Plan.

6. The accounting method used to prepare the financial documents is the cash basis.

7. The documents filed separately herewith as Exhibits "F" and "G" are true and correct copies of the Federal income tax returns filed by the Debtor for 2007 and 2008.

Date: January 21, 2010

ARTHUR ASLANIAN, Managing
Member, The Andalucia
Project, LLC

Submitted by:

LAW OFFICES OF DAVID A. TILEM

By:

David A. Tilem, Attorneys
for The Andalucia Project,
LLC

24

1

**BALLOT FOR ACCEPTING OR REJECTING PLAN**

2

    The Andalucia Project, LLC ("Debtor") has filed a Disclosure Statement

3

and Plan of Reorganization on January 21, 2010.  By this ballot you will

4

decide whether to accept or reject this Plan.

5

    The Plan referred to in this ballot can be confirmed by the Court and

6

thereby bind you if it is accepted by the holders of two-thirds in amount and

7

more than one-half in number of claims in each class and the holders of two-

8

thirds in amount of equity security interests in each voting class.

9

    If the requisite acceptances are not obtained, the Court may

10

nevertheless confirm the Plan if the Court finds that the Plan accords fair

11

and equitable treatment to the class or classes rejecting it and otherwise

12

satisfies the requirements of 11

13

U.S.C.A. § 1129(b).

    Check the appropriate line below, which describes your interest:

14

    ___   The undersigned is a creditor with an allowed claim in the amount
          of $_____

15

    ___   The undersigned is the holder of ___% equity interest in the
          Debtor.

16

I hereby:      **[ ] Accept the Plan**      **[ ] Reject the Plan**

17

18

Print or type name: _____

19

State which class you are a member of: _____

20

Signed: _____

21

If appropriate, by: _____ as _____

22

Address: _____

23

Return this ballot on or before 5:00 p.m. California time on _____, 2009 to:

24

        Lorena Diaz
        Law Offices of David A. Tilem

25

        206 N. Jackson St., #201
        Glendale, CA 91206

26

27

28