David A. Tilem (Bar No. 103825)
LAW OFFICES OF DAVID A. TILEM
206 North Jackson Street
Glendale, California 91206
Tel: 818-507-6000    Fax: 818-507-6800
Email: DavidTilem@TilemLaw.com

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | ) Case No. **1:09-21502-MT** |
| | ) |
| | ) Chapter 11 |
| | ) |
| | ) **NOTICE OF MOTION AND MOTION TO** |
| | ) **AMEND CHAPTER 11 PLAN OF** |
| | ) **REORGANIZATION UNDER 11 U.S.C.** |
| **THE ANDALUCIA PROJECT, LLC,** | ) **§ 1127; POINTS AND AUTHORITIES;** |
| | ) **DECLARATION IN SUPPORT** |
| | ) |
| | ) Date: June 14, 2001 |
| | ) Time: 11:00 a.m. |
| | ) CtRm: 302 |
| Debtor. | )       21041 Burbank Blvd. |
| _____ | )       Woodland Hills, CA 91367 |

**TO THE HONORABLE MAUREEN TIGHE, UNITED STATES BANKRUPTCY JUDGE, ALL**

**CREDITORS AND ALL OTHER PARTIES IN INTEREST:**

        NOTICE IS HEREBY GIVEN: that THE ANDALUCIA PROJECT, LLC

("Debtor"), the debtor and debtor-in-possession, hereby moves to

modify its proposed First Amended Plan of Reorganization pursuant

to Bankruptcy Code § 1127 in the manner, and for the reasons set

forth below.

        The moving papers consist of this notice, the attached

Memorandum of Points and Authorities, the attached Declaration and

1  Exhibits "1", "2", "3" and "4". Exhibit "1" is the new proposed
2  plan of reorganization (hereafter referred to as Debtor's Second
3  Amended Plan). Exhibit "2" is a copy of Debtor's First Amended
4  Plan. Exhibit "3" is a copy of Debtor's Second Amended Plan which
5  has been compared to Debtor's First Amended Plan. Copies of the
6  Exhibits to Debtor's Second Amended Plan are attached as Exhibit
7  "4".

8      Pursuant to Local Rule 9013-1(c)(2), notice is further given
9  that any written response must be filed and served at least 14 days
10 before the hearing. Debtor may be asking the Court to consider
11 this motion on short notice. If the Court grants that request, a
12 further notice will be provided which sets forth the date and time
13 of the hearing and the deadline, if any, for filing a written
14 response.

15     Based on this motion, Debtor requests that the Court approve
16 the proposed modification and consider confirmation of Debtor's
17 Second Amended Plan in lieu of Debtor's First Amended Plan.

18 Date: May 21, 2010                    LAW OFFICES OF DAVID A. TILEM

20                                       By: _____
21                                           David A. Tilem, Attorneys
                                             for Debtor

### TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . 3

II.    **JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . 5

III.   **THE APPLICABLE LAW** . . . . . . . . . . . . . . . . . . 5

    A.   SECTION 1122 . . . . . . . . . . . . . . . . . . 6

    B.   SECTION 1123 . . . . . . . . . . . . . . . . . . 6

    C.   SECTION 1125 . . . . . . . . . . . . . . . . . . 6

    D.   SECTIONS 1121-1128 . . . . . . . . . . . . . . . 7

        1.   Section 1121 . . . . . . . . . . . . . . 7

        2.   Section 1122 . . . . . . . . . . . . . . 7

        3.   Section 1123 . . . . . . . . . . . . . . 7

        4.   Section 1124 . . . . . . . . . . . . . . 7

        5.   Section 1125 . . . . . . . . . . . . . . 7

        6.   Section 1126 . . . . . . . . . . . . . . 7

        7.   Section 1127 . . . . . . . . . . . . . . 8

        8.   Section 1128 . . . . . . . . . . . . . . 8

    E.   SECTION 1129(a) . . . . . . . . . . . . . . . . 8

        1.   Section 1129(a)(1): The Plan Complies With
The Applicable Provisions of Chapter 11 . . . . . 9

        2.   Section 1129(a)(2): The Plan Proponent Has9
Complied With The Applicable Provisions Of
Chapter 11 . . . . . . . . . . . . . . . . 9

        3.   Section 1129(a)(3): The Plan Has Been
Proposed In Good Faith And Not By Any Means
Forbidden By Law . . . . . . . . . . . . . . 9

        4.   Section 1129(a)(4): Payments Made or
Promised for Services or Costs and Expenses
are Disclosed . . . . . . . . . . . . . . . 10

        5.   Section 1129(a)(5): The Identity of Future
Management is Disclosed . . . . . . . . . . 10

        6.   Section 1129(a)(6): No Regulatory Approval
is Necessary . . . . . . . . . . . . . . . 10

/ / /

7.    Section 1129(a)(7): The Best Interest
      Test is Necessary . . . . . . . . . . .  10

8.    Section 1129(a)(8): Each Class has
      Accepted The Plan or is Not Impaired . . . . . .  10

9.    Section 1129(a)(9): Priority Claims are
      Given Appropriate Treatment . . . . . . . . .  11

10.   Section 1129(a)(10): At Least One
      Impaired Class has Accepted the Plan . . . . . .  11

11.   Section 1129(a)(11): Confirmation is
      Not Likely to be Followed by Need for
      Further Reorganization . . . . . . . . . . . .  11

12.   Section 1129(a)(12): All Fees Required by
      28 U.S.C. § 1930 Have or Will Be Paid . . . . .  13

13.   Section 1129(a)(13): The Retiree Protection
      Section is Inapplicable . . . . . . . . . . .  13

F.  SECTION 1129(b) . . . . . . . . . . . . . . . . .  13

    1.    § 1129(b)(1) - The Plan Does
          Not Discriminate . . . . . . . . . . . . .  13

    2.    § 1129(b)(2)(A)(i) - The Plan is
          Fair, Equitable to NAT . . . . . . . . . .  13

    3.    § 1129(b)(2)(B)(ii) - The Plan is Fair,
          Equitable to Unsecured Creditors . . . . . . .  14

          a.    Value Which is New . . . . . . . . .  14
          b.    Substantial Amount . . . . . . . . .  14
          c.    Money's Worth . . . . . . . . . . .  15
          d.    Necessary to Reorganization . . . . . . .  15
          e.    Reasonably Equivalent Value . . . . . . .  16

IV.  **CONCLUSION** . . . . . . . . . . . . . . . . .  16

**DECLARATION OF ARTHUR ASLANIAN** . . . . . . . . . . .  17

# **TABLE OF AUTHORITIES**

**CASES**

*In re Acequia, Inc.,*
    787 F.2d 1352 (9th Cir. 1986)  . . . . . . . . . . . . 8

*In re Ambanc La Mesa Limited Partnership,*
    115 F.3d 650 (1997) . . . . . . . . . . . . . . . . . 14

*In re Bonner Mall Partnership,*
    2 F.3d 899 (9th Cir. 1993) . . . . . . . . . . . . . 14

*Computer Task Group, Inc. v. Brotby (In re Brotby),*
    303 B.R. 177, 195 (B.A.P. 9th Cir. 2003) . . . . . . . 14, 15

*In re Holthoff,*
    58 B.R. 216 (Bankr. E.D. Ark. 1985) . . . . . . . . . . 8

*In re Jorgensen,*
    66 B.R. 104 (Bankr. 9th Cir. 1986) . . . . . . . . . . 9

*In re Patrician St. Joseph Partners Ltd. Partnership,*
    169 B.R. 669 (D. Ariz. 1994) . . . . . . . . . . . . 11

*In re Prudential Energy Company,*
    58 B.R. 857 (Bankr. E.D.N.Y. 1986) . . . . . . . . . . 8

**STATUTES**

11 U.S.C. § 1111(b) . . . . . . . . . . . . . . 4, 6, 12, 13
11 U.S.C. § 1121 . . . . . . . . . . . . . . . . . . . . 7
11 U.S.C. §§ 1121-28 . . . . . . . . . . . . . . . . . 5, 7
11 U.S.C. § 1122 . . . . . . . . . . . . . . . . 5, 6, 7, 9
11 U.S.C. § 1123 . . . . . . . . . . . . . . . . 5, 6, 7, 9
11 U.S.C. § 1123(a)(5) . . . . . . . . . . . . . . . . . 6
11 U.S.C. § 1123(a)(6) . . . . . . . . . . . . . . . . . 6
11 U.S.C. § 1123(a)(7) . . . . . . . . . . . . . . . . . 6
11 U.S.C. § 1123(a)(8) . . . . . . . . . . . . . . . . . 6
11 U.S.C. § 1124 . . . . . . . . . . . . . . . . . . . . 7
11 U.S.C. § 1125 . . . . . . . . . . . . . . . . . . 5, 6, 7
11 U.S.C. § 1126 . . . . . . . . . . . . . . . . . . . . 7
11 U.S.C. § 1127 . . . . . . . . . . . . . . . . . . . 5, 8
11 U.S.C. § 1127(a) . . . . . . . . . . . . . . . . . . . 5
11 U.S.C. § 1127(d) . . . . . . . . . . . . . . . . . 7, 11
11 U.S.C. § 1127(f)(1) . . . . . . . . . . . . . . . . 7, 8
11 U.S.C. § 1128 . . . . . . . . . . . . . . . . . . . . 8
11 U.S.C. § 1129 . . . . . . . . . . . . . . . . . . . 5, 8
11 U.S.C. § 1129(a) . . . . . . . . . . . . . . . . . . 8, 9
11 U.S.C. § 1129(a)(2) . . . . . . . . . . . . . . . . . 9
11 U.S.C. § 1129(a)(3) . . . . . . . . . . . . . . . . . 9
11 U.S.C. § 1129(a)(4) . . . . . . . . . . . . . . . . . 10
11 U.S.C. § 1129(a)(5) . . . . . . . . . . . . . . . . . 10
11 U.S.C. § 1129(a)(6) . . . . . . . . . . . . . . . . . 10

11 U.S.C. § 1129(a)(7) . . . . . . . . . . . . . . . . . . 10
11 U.S.C. § 1129(a)(8) . . . . . . . . . . . . . . 3, 8, 10
11 U.S.C. § 1129(a)(9) . . . . . . . . . . . . . . . . . . 11
11 U.S.C. § 1129(a)(10) . . . . . . . . . . . . . . . . . 11
11 U.S.C. § 1129(a)(11) . . . . . . . . . . . . . . 3, 4, 11
11 U.S.C. § 1129(a)(12) . . . . . . . . . . . . . . . . . 13
11 U.S.C. § 1129(a)(13) . . . . . . . . . . . . . . . . . 13
11 U.S.C. § 1129(b) . . . . . . . . . . . . . 3, 8, 10, 13
11 U.S.C. § 1129(b)(1) . . . . . . . . . . . . . . . . . 13
11 U.S.C. § 1129(b)(2)(A) . . . . . . . . . . . . . . . . 4
11 U.S.C. § 1129(b)(2)(A)(i) . . . . . . . . . . . . . . 13
11 U.S.C. § 1129(b)(2)(B)(ii) . . . . . . . . . . . . . . 14
28 U.S.C. § 157(a) . . . . . . . . . . . . . . . . . . . . 5
28 U.S.C. § 157(b)(1) . . . . . . . . . . . . . . . . . . 5
28 U.S.C. § 157(b)(2)(L) . . . . . . . . . . . . . . . . . 5
28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . 5

**RULES**

<strong><u>Federal Rules of Bankruptcy</u></strong>

FRBP Rule 3008(a)(2) . . . . . . . . . . . . . . . . . . . 9
FRBP Rule 3020(b)(2) . . . . . . . . . . . . . . . . . . . 9

<strong><u>Local Bankruptcy Rules</u></strong>

LBR Rule 9013-1(c)(2) . . . . . . . . . . . . . . . . . . 2

# I.

## INTRODUCTION

This case was filed on September 1, 2009. The Debtor filed its First Amended Plan of Reorganization (the "First Amended Plan") on March 18, 2010. Following a hearing the Court approved the Disclosure Statement by Order entered on March 26, 2010. A hearing to consider confirmation of the First Amended Plan is set for June 14, 2010 at 11:00 a.m.

The First Amended Plan designates 5 Classes which have voted as follows:

| Class # | Class Description | Vote |
|---------|-------------------|------|
| 1 | Real property taxes ("RP Taxes") | Not Impaired - Accepted |
| 2 | NAT Real Estate Management Group, Inc. ("NAT") | Rejected |
| 3 | Tenants holding security deposits ("Tenants") | Accepted |
| 4 | General unsecured creditors ("GenUnsec") | No votes - Rejected |
| 5 | Membership Interests ("Equity Holders") | Not Impaired - Accepted |

Only NAT filed opposition to confirmation of Debtor's First Amended Plan.

The Court considered NAT's objections at a hearing on May 10, 2010 and concluded that all of the requirements for confirmation were satisfied except those found at Sections 1129(a)(8) (acceptance by creditors) and (a)(11) (feasibility). As to sub-Section 1129(a)(11) the Court set a further hearing to consider feasibility. As to sub-Section 1129(a)(8), the Court recognized that Debtor was entitled to seek confirmation pursuant to Section 1129(b) and set those issues for further consideration at the same

1  hearing.

2  　　　Following the May 10, 2010 hearing, Debtor's representative
3  contacted representatives of NAT to see if the objection could be
4  overcome by settlement.  That effort has failed thus far.  While
5  efforts continue and additional meetings are anticipated, the
6  confirmation schedule set by the Court requires the Debtor to
7  promptly file this motion.

8  　　　The only classes affected by the proposed modifications are
9  Classes 2 (NAT secured) and 4 (unsecured), both of which rejected
10  the First Amended Plan.  The proposed modifications are intended to
11  address the issues under Section 1129(a)(11) and 1129(b)(2)(A)
12  raised by NAT.  Debtor recognizes that the Second Amended Plan is
13  less favorable to NAT than the First Amended Plan, however, NAT's
14  objections are much easier to overcome with a less ambitious (and
15  less generous) plan.  For the convenience of the Court and the
16  parties, copies of the proposed Second Amended Plan and the related
17  exhibits are attached as Exhibits "1", "2", 3 and "4".

18  　　　The proposed modifications provide conventional treatment for
19  NAT's claim.  Subject to NAT's rights under Section 1111(b), the
20  claim is bifurcated.  The secured component of $1.4 million is paid
21  partially in cash ($250,000) with $1.15 million to be paid over 30
22  years at a market rate of interest (5.5%).  The unsecured component
23  (once determined) is given the same treatment as will be provided
24  to all unsecured creditors.  If NAT elects treatment under Section
25  1111(b), its claim will be paid partially in cash ($250,000) with
26  the balance (once determined) to be paid over 30 years without
27  interest.

28  　　　The proposed modifications also provide for additional working

1   capital of not less than $150,000 to be contributed by Debtor's

2   insiders.  This contribution will ensure that Debtor has sufficient

3   working capital to meet its obligations both immediately after

4   confirmation and for the long term.

5                              **II.**

6                          **JURISDICTION**

7        Pursuant to 28 U.S.C. § 1334, jurisdiction over Debtor's

8   Chapter 11 case is vested in the United States District Court for

9   the Central District of California.  By virtue of Section 157(a) of

10  Title 28 and the Order of the Chief Judge of the United States

11  District Court, Central District of California, entered on July 20,

12  1984, all cases and proceedings under Title 11 have been referred

13  to the Bankruptcy Court.

14       Plan amendments relate to plan confirmation which is a core

15  proceeding 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(L).

16                             **III.**

17                     **THE APPLICABLE LAW**

18       Section 1127(a) authorizes a plan proponent to modify its plan

19  prior to confirmation so long as the modified plan meets the

20  requirements of Sections 1122 and 1123.  Section 1127 requires the

21  plan proponent to comply with Section 1125.  Finally the plan

22  proponent and the modified plan must comply with Sections 1121-1128

23  and the requirements of Section 1129.  The Court may also require

24  additional disclosure under Section 1125.

25       Given the limited nature of the proposed plan modifications,

26  most confirmation requirements satisfied by the First Amended Plan

27  are also satisfied by the proposed Second Amended Plan.

28  / / /

A.   **SECTION 1122**

The proposed Second Amended Plan does not alter the classification of claims previously reviewed by the Court and therefore presents no new issues under this Section.

B.   **SECTION 1123**

Only the requirements of § 1123(a) are mandatory.  The proposed Second Amended Plan does not alter class designation, does not change the impaired or non-impaired designation of each class, specifies the treatment of each class and provides consistent treatment for all members within a class, specifically including the unsecured component of NAT's claim (should NAT fail to elect treatment under § 1111(b).

Unlike the First Amended Plan, the Second Amended Plan reduces the amount of debt which must be paid in both the short term and the long term.  The Second Amended Plan also enhances Debtor's operating capital.  These changes improve plan feasibility and satisfy the requirements of § 1123(a)(5).

As the Court has previously noted, § 1123(a)(6) and (a)(8) are not applicable to this case.

The argument for satisfaction of § 1123(a)(7) remains the same as it was under the First Amended Plan which the Court previously found satisfactory.

C.   **SECTION 1125**

Section 1125 concerns disclosure required for plan balloting. Debtor submits that the Second Amended Plan (and Disclosure Statement) contains the same amount of information and the same level of detailed information as was provided in the First Amended Plan.  Thus the Second Amended Plan should be approved as having

1  adequate information.

2      Under the facts of this case, however, there is no need to

3  consider the requirements of § 1125.  Class 3 (tenants) have voted

4  in favor of the Plan.  They are not affected by the proposed

5  modifications, § 1127(d) and hence unlikely to vote differently if

6  asked to do so.  Class 2 and 4 members, who **are** adversely affected

7  by the proposed modifications, have already voted to reject the

8  plan.  They are unlikely to change their votes to accept a plan

9  which treats them less favorably than the prior version.

10      Further voting is unnecessary and hence compliance with the

11  disclosure requirements of § 1125 is unnecessary.

12  **D.    SECTIONS 1121 - 1128**

13      Section 1127(f)(1) makes §§ 1121 - 1128 applicable to the

14  proposed modification.

15      **1.    Section 1121**

16      Authorizes the Debtor to file a plan.  The Second Amended Plan

17  is proposed by the Debtor.

18      **2.    Section 1122**

19      Previously considered, above.

20      **3.    Section 1123**

21      Previously considered, above.

22      **4.    Section 1124**

23      This Section is definitional.

24      **5.    Section 1125**

25      Previously considered, above.

26      **6.    Section 1126**

27      This Section provides the plan voting rules.  For the reasons

28  set forth above, further voting with respect to the Second Amended

1  Plan is unnecessary and wasteful.

2      **7.    Section 1127**

3      This motion is all about establishing compliance with § 1127.

4      **8.    Section 1128**

5      This section requires the Court to conduct a hearing on plan

6  confirmation.  In re Acequia, Inc., 787 F.2d 1352, 1358 (9th Cir.

7  1986).  The role of the Court in the confirmation process has been

8  described in In re Holthoff, 58 B.R. 216, 218 (Bankr. E.D. Ark.

9  1985) as follows:

10      In addition to the consideration of objections raised by
        creditors, the Court has a mandatory independent duty to
11      determine whether the Plan has met all of the
        requirements necessary for confirmation.
12

13  And additionally in In re Prudential Energy Company, 58 B.R. 857,

14  862 (Bankr. E.D.N.Y. 1986):

15      Regardless of whether a valid objection to confirmation
        has been asserted, however, the Code imposes upon the
16      Court the responsibility to determine whether the
        requirements of Section 1129(a) have been
17      met...Discharging this responsibility does not entail
        investigation of the Debtor, but it does require
18      sufficient documentation to be submitted and to ask
        appropriate questions concerning the requirements of
19      Section 1129(a).

20  Such a hearing is now pending.

21  **E.    SECTION 1129(a)**

22      Section 1127(f)(1) requires that the Second Amended Plan also

23  satisfy the requirements of § 1129.  Given the limited and focused

24  nature of the modifications, the Second Amended Plan continues to

25  comply with all provisions of 11 U.S.C. § 1129(a) except §

26  1129(a)(8).  As to that requirement, the requirements of § 1129(b)

27  are satisfied.

28  / / /

1.   **Section 1129(a)(1):   The Plan Complies With The Applicable Provisions of Chapter 11**.

Section 1129(a) requires a plan to comply with the applicable provisions of Chapter 11.   In general, a plan must comply with Sections 1122 and 1123 of the Code.   These sections have been discussed above.

2.   **Section 1129(a)(2):   The Plan Proponent Has Complied With The Applicable Provisions Of Chapter 11**.

Arthur Aslanian has signed a declaration that the Plan complies with the provisions of Chapter 11.

3.   **Section 1129(a)(3):   The Plan Has Been Proposed In Good Faith And Not By Any Means Forbidden By Law**.

"Good faith" is assessed by a totality of circumstances, and requires an exercise of fundamental fairness in dealing with creditors, and requires that a plan achieve a result consistent with the objectives and purposes of the Bankruptcy Code.   In re Jorgensen, 66 B.R. 104, 109 (Bankr. 9th Cir. 1986).   The proposed modifications merely adhere more closely to, and apply rights provided under the Code.   It cannot be gainsaid that applying the Code is inconsistent with the Code's objectives and purposes.

If required, the Debtor will offer testimony to show that the Plan was proposed in good faith and not by any means forbidden by law.   However, unless a substantive objection regarding compliance with this section has been filed, Bankruptcy Rule 3008(a)(2) and Bankruptcy Rule 3020(b)(2) permit this court to find, without hearing evidence, that the requirement of Section 1129(a)(3) has been satisfied.

/ / /

4.   **Section 1129(a)(4):   Payments Made or Promised for
Services or Costs And Expenses are Disclosed**.

The Second Amended Plan does not alter this portion of the
First Amended Plan which has previously been reviewed and approved
by the Court.   All professionals rendering services to the Debtor
are receiving compensation only with Court approval.

5.   **Section 1129(a)(5):   The Identity of Future Management is
Disclosed**.

The Second Amended Plan does not alter this portion of the
First Amended Plan which has previously been reviewed and approved
by the Court.   Compliance is found in the section of the Plan
entitled "Management of Debtor."

6.   **Section 1129(a)(6):   No Regulatory Approval Is Necessary**.

The Second Amended Plan does not alter this portion of the
First Amended Plan which has previously been reviewed and approved
by the Court.   This provision does not apply to the Plan proposed
by the Debtor.

7.   **Section 1129(a)(7):   The Best Interest Test Is Satisfied
With Respect To Each Class Of Creditors**.

The Debtor's assets consist of the real property and little
else.   If this case were converted, NAT would receive the property
and all other creditors would receive nothing.   The Second Amended
Plan enhances the recovery of all interested parties, including NAT
which receives something on the unsecured portion of its claim.

8.   **Section 1129(a)(8):   Each Class has accepted the plan or
is not impaired**.

Classes 2 and 4 have voted to reject the Plan.   Debtor seeks
confirmation under § 1129(b).

**9.   Section 1129(a)(9):   Priority Claims Are Given Appropriate Treatment.**

The Second Amended Plan does not alter this portion of the First Amended Plan which has previously been reviewed and approved by the Court.

**10.   Section 1129(a)(10):   At least One Impaired Class Has Accepted The Plan.**

The First Amended Plan was accepted by Class 3.   The treatment of Class 3 is not affected by the proposed modifications.   Class 3 is deemed to have accepted the Second Amended Plan, § 1127(d).

**11.   Section 1129(a)(11):   Confirmation is Not Likely to be Followed by Need for Further Reorganization.**

Section 1129(a)(11) contains a feasibility standard.   "A plan meets [the] feasibility standard if the plan offers a reasonable prospect of success and is workable ...." and "... a guarantee of the future is not required."   In re Patrician St. Joseph Partners Ltd. Partnership, 169 B.R. 669, 676 (D. Ariz. 1994).

The two criteria of feasibility are sufficient cash on hand on the Effective Date and that the Debtor will have sufficient cash on hand over the life of the Plan to make required Plan payments.   The Second Amended Plan clearly satisfies this standard.

The First Amended Plan provided for a capital contribution of $350,000.   The Second Amended Plan increases that to $550,000 which will include a working capital reserve of not less than $150,000. All short term obligations are satisfied and the long term obligation is reduced to the fair market value of the Property. Feasibility should no longer be in dispute.

1    Debtor contends that 5.5% is the appropriate current market

2  rate of interest if NAT fails to elect treatment under § 1111(b).

3  At that rate, Debtor's monthly debt service is computed as follows:

4        1,400,000      secured claim based on property value
         - 250,000      cash payment
5        1,150,000      note balance due

6  The monthly amortized payment on $1.15 million over 30 years is

7  $6,529.57.  As reflected on the Monthly Operating Reports filed in

8  the case, the average rental income from the property is more than

9  $6,500.  With a cash reserve of $150,000, the Second Amended Plan

10 is feasible.

11   If NAT elects treatment under § 1111(b), the computation is

12 more complicated.  First, even NAT is not certain how much it is

13 owed, contending at different times that it is owed $2.8 million,

14 $2.4 million and $2.2 million.  If the parties are unable to reach

15 agreement, the Court will be called upon to quantify the claim.

16 The following chart reflects monthly payment amounts depending on

17 the claim amount:

| Claim Amount | 2.5 Mil | 2.4 Mil | 2.3 Mil | 2.25 Mil | 2.2 Mil | 2.1 Mil |
|---|---|---|---|---|---|---|
| Cash Down-payment | 250,000 | 250,000 | 250,000 | 250,000 | 250,000 | 250,000 |
| Financed Amount | 2.25 Mil | 2.15 Mil | 2.05 Mil | 2 Mil | 1.95 Mil | 1.85 Mil |
| Interest Rate Needed | 1.594098 | 1.440258 | 1.279339 | 1.196012 | 1.110646 | 0.933373 |
| **Monthly Payment Amount** | **7,867.20** | **7,358.61** | **6,859.94** | **6,614.45** | **6,371.57** | **5,893.88** |

23 In each case, the end result is that NAT will receive the Claim

24 amount which has a present value of $1.4 million.  With monthly

25 rental income of $6,500 and a cash reserve of $150,000, the Second

26 Amended Plan is feasible and the need for further reorganization is

27 unlikely.

28 / / /

12.   **Section 1129(a)(12):    All Fees Required By 28 U.S.C. §
1930 Have Or Will Be Paid**.

The Second Amended Plan does not alter this portion of the
First Amended Plan which has previously been reviewed and approved
by the Court.

13.   **Section 1129(a)(13):    The Retiree Protection Section is
Inapplicable**.

The Second Amended Plan does not alter this portion of the
First Amended Plan which has previously been reviewed and approved
by the Court.

F.    SECTION 1129(b)

Because Classes 2 and 4 have rejected the First Amended Plan
(and presumably also the Second Amended Plan), Debtor requests
confirmation of the Second Amended Plan pursuant to § 1129(b).   The
Court must find that the Second Amended Plan "does not discriminate
unfairly", and that it is "fair and equitable", § 1129(b)(1).

1.    **§ 1129(b)(1) - The Plan Does Not Discriminate**.

The proposed treatment afforded each creditor is consistent
within its Class.   The Second Amended Plan does not discriminate.

2.    **§ 1129(b)(2)(A)(i) - The Plan Is Fair, Equitable to NAT**.

The Second Amended Plan provides for NAT to retain its lien.
If NAT elects treatment under § 1111(b), the present value
computation set forth above demonstrates that NAT will receive the
full amount of its claim and a present value of $1.4 million.   If
NAT does not elect treatment under § 1111(b), NAT receives the
value of its secured claim at a commercially reasonable rate of
interest.   Based on the foregoing, the Second Amended Plan is fair
and equitable with respect to NAT.

3.   **§ 1129(b)(2)(B)(ii) - The Plan Is Fair, Equitable to Unsecured Creditors**.

This provision is the "Absolute Priority Rule" which precludes junior claim holders or interest holders from receiving anything under the plan unless unsecured creditors are paid in full.  In Chapter 7, unsecured creditors in this case, however under the Second Amended Plan, equity holders retain their interests. Accordingly, the Second Amended Plan relies on the "New Value Exception" or Corollary to the Absolute Priority Rule.

As articulated in this Circuit, the New Value Exception requires "that former equity holders offer value under the Plan that is (1) new, (2) substantial, (3) in money or money's worth, (4) necessary for successful reorganization, and (5) reasonably equivalent to the value or interest received." In re Ambanc La Mesa Limited Partnership, 115 F.3d 650, 654 (1997) quoting from In re Bonner Mall Partnership, 2 F.3d 899, 908 (9th Cir.1993), *mot. to vacate denied and cert. dismissed*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). See also  Computer Task Group, Inc. v. Brotby (In re Brotby), 303 B.R. 177, 195 (B.A.P. 9th Cir. 2003).

### a.   Value Which is New

The Second Amended Plan requires Debtor's insiders to contribute $550,000 of new money, funds not previously available to the Debtor.

### b.   Substantial Amount

The Ninth Circuit has no specific standard to determine whether a contribution is "substantial".  The contribution cannot, however, be de minimis.  Ambanc, 115 F.3d at 655; Brotby, 303 B.R. at 197.  Considerations include comparing the contribution to the

1  total of unsecured debt, comparing the contribution to the amount

2  of debt to be discharged, and consideration of the amount of debt

3  to be discharged.  *Id*.

4      In this case, the amount of the contribution is $550,000.  The

5  amount of unsecured debt is either $32,000 or as much as $1,432,000

6  depending on: (1) whether NAT fails to elect treatment under

7  §1111(b); and (2) the actual amount of NAT's claim.  Thus the

8  contribution ranges from 17 times the unsecured debt to 38.4% of

9  the unsecured debt.  In either case, the contribution is not *de*

10 *minimis* - such cases seem to focus on ratios in the single digits

11 (under 10%).

12     The amount of the debt to be discharged is between $30,400 and

13 $1.36 million.  Again, the contribution ranges from 18 times to 40%

14 of the discharged debt.  In either case, not *de minimis*.

15     Finally, the Court is directed to consider the size of the

16 dividend, in this case 5%, but no further guidance is provided.

17          **c.   Money or Money's Worth**

18     The proposed contribution is in the form of money.

19          **d.   Necessary to Reorganization**

20     The funds to be contributed are necessary to pay all

21 administrative claims, to provide for the Class 3 claims, to make

22 the initial down-payment on the Class 2 claim and to fund the Class

23 4 claim payment.  Further, the working capital contribution of not

24 less than $150,000 is necessary to provide the Debtor with

25 sufficient funds to maintain the property and meet any shortfall in

26 rental income so that the long term obligation to NAT can be kept

27 current.  NAT has previously argued that the rental income, alone,

28 is insufficient to make the plan feasible.

### e.    Reasonably Equivalent Value

The facts of this case suggest that Debtor's insiders are paying substantially more than the reasonably equivalent value of that they will receive. Debtor's principal asset is real property valued by the Court at $1.4 million. Debtor's other assets are nominal. As of the Effective Date, Debtor will have $250,000 in equity in the real property for which Debtor's principals will have paid $550,000.

Employing fraudulent conveyance principals, the Estate receives a windfall as a result of the new value to be injected by the existing equity.

### IV.

### CONCLUSION

Based upon the analysis and arguments presented herein, the Debtor's Second Amended Plan should be confirmed.

Dated: May 21, 2010                 Respectfully submitted,

                                    LAW OFFICES OF DAVID A. TILEM


                                    By _____
                                    David A. Tilem, counsel for
                                    Debtor and Debtor-in-
                                    Possession, The Andalucia
                                    Project, LLC

## DECLARATION OF ARTHUR ASLANIAN

I, Arthur Aslanian, declare and state as follows:

1.    I am the 99% Member and Managing Member of debtor The Andalucia Project, LLC. (the "Debtor"). The matters stated herein below are known to me of personal knowledge and if called to testify thereto, I could do so competently and under oath.

2.    This case was filed on September 1, 2009. I have worked diligently with counsel to evaluate and project the potentials for the Debtor to reorganize. The evaluations are contained within the Disclosure Statement and Amended Plan.

3.    We have been working to ensure that the Debtor can reorganize and I believe that Debtor has the ability and can reorganize under the Plan offered for confirmation. The details of the Plan were carefully determined, and I believe the plan is proposed in good faith and pursuant to applicable bankruptcy law.

4.    I attended a hearing at which the Court determined that the value of the Property was $1.4 million.

5.    Although I did not vote on the plan, I do support confirmation. I am aware that professional compensation may not be paid until the case is dismissed or the Court has approved the amount to be paid.

5.    Based on the proposed Plan, by the Effective Date the Debtor will be required to pay approximately $550,000. Before June 14, 2010 I will transmit to Debtor's bankruptcy counsel the sum of $550,000 which may be used to pay Debtor's obligations under the Plan.

6.    All claims will be satisfied except for those asserted

1   by the Tenants for their security deposits and the claim of NAT
2   Real Estate Management Group, Inc. ("NAT").
3       7.    On or before the Effective Date, Debtor will establish
4   an escrow account and deposit into the account the amount
5   necessary to pay all security deposits in full if, and when such
6   amounts become due.
7       8.    The NAT claim will be paid over a period of 30 years
8   using the rental income from the property, the working capital
9   of the Debtor and, if necessary, supplemented by me.
10      9.    On or about August 28, 2009 I entered into an agreement
11  with First Regional Bank, NAT's predecessor in interest, fixing
12  the interest rate on the obligation at Wall Street Journal
13  ("WSJ") prime plus .5%.  A true and correct copy of the Change
14  in Terms Agreement is attached as Exhibit "A".
15      10.  The WSJ prime rate as of April 29, 2010 was 3.25% which
16  means the interest rate on the obligation to NAT is 3.75%.
17  While I do not know the exact amount currently owed on the NAT
18  claim, after an initial payment of $250,000, the balance due
19  should be about $2 million.
20      11.  Throughout this case, the property has generated $6,500
21  per month in rental income.
22      I declare under penalty of perjury under the laws of the
23  State of California that the foregoing is true and correct and
24  that this Declaration was signed on May 20, 2010 at
25  Sherman Oaks, California.
26
27
28                                          Arthur Aslanian

# CHANGE IN TERMS AGREEMENT

| Principal $2,125,000.00 | Loan Date 04-01-2008 | Maturity 10-01-2008 | Loan No 9750264 | Call / Coll 1D / 74 | Account | Officer MK | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** The Andalucia Project, LLC
14900 Ventura Boulevard, Suite 220
Sherman Oaks, CA 91403

**Lender:** FIRST REGIONAL BANK
South Bay Real Estate
970 W. 190th Street, Suite 400
Torrance, CA 90502
(310) 715-6776

---

**Principal Amount:** $2,125,000.00        **Initial Rate:** 5.500%        **Date of Agreement:** August 28, 2008

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A Promissory Note in the original amount of $2,125,000.00 dated September 27, 2006 and a Change in Terms Agreements dated October 1, 2007 and April 1, 2008 by and between The Andalucia Project, LLC and Lender.

**DESCRIPTION OF COLLATERAL.** A Deed of Trust dated September 27, 2006 for Real Property located at 4235-4241 N. Fulton Avenue, Los Angeles, CA 91423.

**DESCRIPTION OF CHANGE IN TERMS.** The floor rate is hereby eliminated effective August 28, 2008.

The interest rate is hereby amended to reflect an increase from Wall Street Journal Prime plus 0.00% to Wall Street Journal Prime plus 0.50%.

In the event Borrower incurs a future Late Charge, Lender will have the option to revert the floor rate back to 8.25% and the interest rate back to Wall Street Journal Prime plus 0%. If the option is exercised, the floor and spread will not revert back to the modified level because of reinstatement.

All other terms and conditions remain the same.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

THE ANDALUCIA PROJECT, LLC

HAZELTINE 23, INC., Managing Member of The Andalucia Project, LLC

By: _____
Arthur R. Aslanian, President of Hazeltine 23, Inc.

---

LASER PRO Lending, Ver. 5.40.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - CA F:\HARLAND\CFI\LPL\G20C.FC TR-3722 PR-37

# EXHIBIT "A" TO DECLARATION OF
# ARTHUR ASLANIAN

019